IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CALYX ENERGY, LLC, WHITE STAR PETROLEUM, LLC f/k/a AMERICAN ENERGY – WOODFORD, LLC,<br>    Plaintiffs,<br>v.<br>TRIDENT STEEL CORPORATION, KEVIN BECKMANN,<br>    Defendants.<br>And<br>TRIDENT STEEL CORPORATION,<br>    Third-Party Plaintiff,<br>v.<br>ACE INDUSTRIAL GROUP, INC, AJU BESTEEL CO., AJU BESTEEL USA, COMMERCIAL METALS COMPANY,<br>    Third-Party Defendants / Third-Party Plaintiffs,<br>v.<br>TUBULAR SERVICES, LLC,<br>    Third-Party Defendant. | Case No. CIV-14-551-R |

**PLAINTIFFS' RESPONSE TO
MOTION TO STRIKE THE ERRATA SHEET OF THOMAS M. SOUERS**

Plaintiffs Calyx Energy, LLC ("Calyx") and White Star Petroleum, LLC ("White Star") (together, "Plaintiffs") object to the Motion to Strike Errata Sheet of Thomas M. Souers with Brief in Support [Dkt. #409] ("Motion") filed herein by Third-Party Defendants AJU Besteel Co., Ltd. ("AJU") and CMC Cometals Steel ("CMC") (collectively, "Third-Party Defendants"). Third-Party Defendants' Motion should be denied for at least the following reasons: (1) at the outset of the deposition of Plaintiffs' operational expert, Thomas M. Souers ("Mr. Souers"), counsel for Third-Party Defendants instructed him "**you can make any changes you wish to the transcript,**"

which specifically included "any substantive changes"; (2) Mr. Souers affirmatively agreed to such instructions, and all parties also agreed by raising no objections ("Rule 30(e) Stipulation"), which Fed. R. Civ. P. 29 expressly permits; (3) the plain language of Fed. R. Civ. P. 30(e) permits changes **in substance** to deposition testimony using errata sheets; (4) the errata sheet corrected incomplete deposition testimony ("the data indicates it's a coupling failure")[1] by clarifying and pointing out additional, more precise data in a business record of Plaintiffs, which all parties have had since April 1, 2015[2]:

> I need to clarify that the Post Frac Daily Report indicates that 6215' correlates to a casing collar. The Casing Tally data, which is more precise, indicates 6215 is casing joint 105, where the failure occurred.[3]

(5) the errata sheet does not alter the ultimate opinions of Mr. Souers regarding the existence of the failure or the cause of the failure in the casing string of the Robison 4-1 MH; (6) the errata sheet is not a "sham affidavit"; (7) Plaintiffs were deprived of the right to cross-examine Mr. Souers at his deposition through no fault of their own; and (8) the errata sheet was not submitted after or in response to any dispositive or other substantive motion. Based on all the facts and law, the Motion should be denied.

## OVERVIEW

Experts of Defendants and Third-Party Defendants have admitted that there was a casing failure in all four of Plaintiffs' damaged wells—including in the Robison. These experts agree the failure in the Robison occurred at a depth of 6214'. Plaintiffs' operational expert, Mr. Souers, performed a "differential analysis," and as a result, Mr.

---

[1] Exhibit "1" (Excerpts of Mr. Souers Deposition Transcript), 125:6-9.
[2] The same documents were also produced August 12, 2006, as part of Mr. Souers' file.
[3] Exhibit "2" (Mr. Souers' Errata Sheet).

Souers determined, *inter alia*: (1) there was a casing failure in the casing string of the Robison; (2) there were no operational or environmental conditions that caused the Robison failure; and (3) the documented history of Trident Steel Corporation's ("Trident") and Kevin Beckmann's ("Beckmann") supplying defective casing resulting in multiple failures in other operators' wells pointed to that as the cause of the Robison failure. These ultimate expert opinions of Mr. Souers have not changed.

The sole issue in the Motion is the errata sheet's correcting reference to a notation made in one of Plaintiffs' business records and the more precise data contained in another of Plaintiffs' business records. Mr. Souers' expert report and both of Plaintiffs' business records contain information about the admitted failure in the Robison at 6214'. Mr. Souers' errata sheet identifies BOTH documents and the information they contain. Mr. Souers' reference in his deposition to "data" was incomplete, and therefore, a clarification to identify the complete data was necessary. Based on the more precise Casing Tally, Mr. Souers corrected his testimony — the admitted failure in the Robison at 6214' was in the casing joint.

The deposition was conducted under the Rule 30(e) Stipulation. This stipulation clearly invites and permits even substantive changes on Mr. Souers' errata sheet, and it supports denial of the Motion. Both the deprivation of Plaintiffs' counsel to cross-examine Mr. Souers during his deposition and the submission of the errata sheet BEFORE any dispositive or substantive motions were filed further support denial of the Motion. The Motion should be denied.

## **BACKGROUND**

Mr. Souers was engaged to determine if there were failures and whether there were causes of the well failures other than defects in the casing string itself.[4] Mr. Souers evaluated and analyzed whether drilling, completion operations or environmental conditions caused the multiple casing string failures suffered by Plaintiffs[5] as opposed to Trident's and Beckmann's on-going fraudulent, bad-faith sale and delivery of defective casing. Mr. Souers also opined as to repair and remediation damages and the value of hydrocarbon bearing strata lost due to the failures.[6]

The casing string is comprised of casing joints, couplings, and threading. Upon completing his analysis, Mr. Souers ruled out drilling, completion operations, and environmental conditions as the cause of the failure in the subject wells, including the Robison:

> If Calyx's drilling or completion methods contributed to the failures, it seems implausible that the other pipe supplier, Hunter Steel, would have had such a small failure rate compared to Trident. With the consistent drilling and completion practices used by Calyx, any issues that could have contributed to **casing and/or coupling failures** in the wells with Trident **casing and couplings** would be spread across both suppliers relatively equally. This is not the case. Furthermore, downhole environmental issues did not contribute to the failures either, for the same reasoning. With my intent to limit the wells to a specific geographic area, the environmental issues, if any existed, would also impact both pipe suppliers equally. In summary, and based on my review of all the information, it is my expert opinion that nothing in regards to drilling activity, running and cementing casing activity, completion operations including fracture treatment operations, nor downhole environmental conditions, contributed **to the**

---

[4] Exhibit "3" (Expert Report of Thomas M. Souers), p. 1.
[5] Ex. 3, p. 1.
[6] Ex. 3, p. 1.

4

> **casing and/or coupling failures** observed in the five wells identified in this report.

Ex. 3, p. 13 (Emphasis added). Mr. Souers further opined concerning the loss of hydrocarbon bearing strata, *inter alia*, with respect to the Robison 4-1 MH:

> The Robison 4-1 lost six stages totaling a loss of 919 ft of horizontal section. These six stages were lost due to a **casing and/or coupling failure located at 6,214 ft MD**.

Ex. 3, p. 14 (Emphasis added).

In Mr. Souers' report and in his deposition testimony, Mr. Souers did identify different components of the casing string.[7] In his deposition, with respect to the Robison, Mr. Souers referred to incomplete data indicating "an apparent coupling failure in the Robison."[8] In his errata sheet, Mr. Souers clarified as to the complete data in Plaintiffs' records, which made his deposition statements about what the data indicates incomplete.[9]

One of Plaintiffs' business records used the imprecise term "correlated with a casing collar" in regard to the casing string at the relevant depth:

[REDACTED]

Exhibit "4" hereto (Excerpt of Post Frac Daily Report, Bates No. Calyx & AEW 63820 - CONFIDENTIAL) ("Daily Report") (filed under seal). However, the other, more precise business record indicates the top of casing joint 105 at a depth of 6212.02'. Exhibit "5" (Excerpt of Casing Tally, Bates No. Calyx & AEW 63880 - CONFIDENTIAL) ("Casing Tally") (filed under seal). This means the coupling on the top, or "mill end," of joint 105

---

[7] Ex. 3, p. 3, and Ex. 1, 192:20-193:9.
[8] Ex. 1, 193:17-194:3.
[9] Ex. 2.

would not have extended deep enough to reach the failure depth of 6214'. At less than 10" in height, the coupling could not have extended deeper than 6213' from the top of joint 105. This difference in the records exists whether Mr. Souers points it out or not.

Mr. Souers' citation to the two notations in two of Plaintiffs' business records is absolutely not a surprise to any of the parties. Mr. Souers' cited and produced both records with his expert report on August 12, 2016 – months prior to his deposition.

Counsel for CMC/AJU began Mr. Souers' deposition with the Rule 30(e) Stipulation:

> The court reporter is taking down everything that's said today, and at some point you probably have seen in the past you'll get a booklet, and you'll have an opportunity for your reading enjoyment to go through it. **At that point you can make any changes you wish to the transcript**, but I need to caution you that you should give your best testimony today. **If there's any substantive changes you make to the transcript, for instance, change the light was red to the light was green could be commented upon by myself or any other attorney in this case in an attempt to impugn your credibility.** Do you understand that?

Ex. 1, 10:11-24. The Rule 30(e) Stipulation is permitted by Rule 29 and is consistent with the plain language of Rule 30(e). Whether Mr. Souers' errata sheet contains a "clarification" or even a "substantive change," it is permitted and proper pursuant to the Rule 30(e) Stipulation, the plain language of the rule, and the majority of courts' interpretation of that rule.

Mr. Souers' errata sheet was delivered January 13, 2017. Not a single dispositive or substantial motion had been filed or was pending in the case. Clearly, Mr. Souers' errata sheet was not a "sham affidavit" filed in response to or in an attempt to avoid any

dispositive or substantive motion.

Plaintiffs' counsel was deprived of their right under Fed. R. Civ. P. 30(c)(1) to cross-examine Mr. Souers before the conclusion of his deposition. Cross-examination would have reminded Mr. Souers of the complete information relating to the Robison failure at 6214′, and this business record issue would have been addressed. Plaintiffs were deprived of the opportunity to cross-examine Mr. Souers when Third-Party Defendants demanded that the deposition be adjourned and concluded at a later, agreed time.

Mr. Souers' deposition should have been concluded on October 21, 2016. The only reason that did not happen was due to the conduct of counsel for Defendants and Third-Party Defendants.

Third-Party Defendants' counsel noticed the deposition for 9:00 a.m. The witness and all counsel were present and ready to go at 9:00 a.m. but for one thing—opposing counsel neglected to schedule a court reporter for the deposition they had noticed. After a delay of more than an hour, the deposition commenced at 10:14 a.m.[10]

Completing the 7-hour deposition in the same day was not a problem for the witness or Plaintiffs' counsel. Conversely, opposing counsel had a flight to catch and demanded the deposition be adjourned and continued. The deposition adjourned at 5:56 p.m. pursuant to another stipulation of all parties.[11]

---

[10] Ex. 1, 6:1-9.
[11] Ex. 1, 217:15-218:3.


All parties stipulated on October 21, 2016, on the record, that: (1) the continuation date would be set within the remaining discovery period based on Mr. Souers' limited availability; (2) no request would be made to exceed the 7-hour statutory limit; and (3) the continued deposition would be conducted telephonically.[12] Based on such stipulation, Plaintiffs agreed to accommodate the demands of Defendants and Third-Party Defendants, and the October 21, 2016 deposition was **adjourned**, not concluded, while Defendants and Third-Party Defendants were still examining Mr. Souers:

> Ms. Fields:   Perfect.  Thank you.  We will **adjourn according to our agreement that we've put on the record**.[13]

Defendants and Third-Party Defendants did not pass the witness on October 21, 2016. As a result, Plaintiffs' counsel advised opposing counsel that, **consistent with other multi-day depositions taken in this case**, Mr. Souers would review his transcript and provide an errata **after conclusion of the deposition**.[14] No party objected to this procedure.

On December 12, 2016, Trident and Beckmann advised Plaintiffs that all parties were in agreement with January 5, 2017, at 10:00 a.m. for the continuation of Mr. Souers' deposition.[15] Despite such stipulation and agreement, which had been in place since October 21, 2016, at approximately 1:00 p.m. on January 3, 2017, Defendants and Third-Party Defendants, for the first time, advised they did not wish to ask any further questions of Mr. Souers. Defendants and Third-Party Defendants thereby effectively "passed the

---

[12] Ex. 1, 190:22-191:22.
[13] Ex. 1, 217:9-11.
[14] Exhibit "6" (H. Nichols letter of November 23, 2016).
[15] Exhibit "7" (Email string among counsel of December 9–12, 2016).

witness" on January 3, 2017. Plaintiffs advised all parties that Plaintiffs would proceed with the continuation and conclusion of Mr. Souers' deposition as previously scheduled by agreement, for January 5, 2017 at 10:00 a.m.[16]

On January 4, 2017, Third-Party Defendants filed a motion to stay the conclusion of Mr. Souers' deposition, wrongly characterizing it as a re-deposition requiring leave of Court under Fed. R. Civ. P. 30(a)(2)(A)(ii).[17] Plaintiffs had no meaningful opportunity to file a written response.

In their Joint Motion, Defendants and Third-Party Defendants erroneously and disingenuously told this Court that "Largely because of this dispute [over document issues], the deposition ended early by agreement."[18] However, what they neglected to advise the Court was that neither Defendants nor Third-Party Defendants served a document subpoena or otherwise properly requested Souers' documents before the deposition, which had been scheduled by agreement for almost a month.[19]

In a phone conference with the Court on the morning of January 5, 2017, the Court, presented with Defendants' and Third-Party Defendants' inaccurate portrayal of the events leading to the adjournment of Mr. Souers' deposition, stayed the deposition and directed Plaintiffs to file a motion if they wished to further pursue completion of Mr.

---

[16] Exhibit "8" (R. Fields letter of January 4, 2017).
[17] Dkt. # 398 ("Joint Motion"), p 5.
[18] Dkt. # 398, p. 3, ¶ 4.
[19] Ex. 1, 158:15-160:6. On August 12, 2016, Plaintiffs voluntarily produced Mr. Souers' file with his expert report. The Notice issued by CMC and AJU **two days** before Mr. Souers' deposition was not a proper or valid Document Subpoena. Notwithstanding CMC/AJU's failure to timely issue or serve a valid Document Subpoena, Plaintiffs voluntarily supplemented Mr. Souers' original voluntary production of his expert file. Ex. 1, 162:21-164:3.

Souers' deposition. The Court also commented that, absent continuation of the deposition, Mr. Souers would be available for examination and cross-examination at trial on the matters Plaintiffs wished to address in deposition cross-examination.

Plaintiffs determined not to seek leave to conduct cross-examination of Mr. Souers in advance of trial. Mr. Souers properly, timely, and as instructed in accordance with the Rule 30(e) Stipulation, submitted his errata sheet on January 13, 2017.

## ARGUMENT AND AUTHORITIES

The plain language of Fed. R. Civ. P. 30(e) allows a deponent to make changes "in form **or substance**" on a deposition errata sheet. Fed. R. Civ. P. 30(e). Without objection from any party, at the beginning of Mr. Souers' deposition, Third-Party Defendants' counsel made the Rule 30(e) Stipulation, which adheres faithfully to the plain language of the rule:

> The court reporter is taking down everything that's said today, and at some point you probably have seen in the past you'll get a booklet, and you'll have an opportunity for your reading enjoyment to go through it. **At that point you can make any changes you wish to the transcript**, but I need to caution you that you should give your best testimony today. **If there's any substantive changes you make to the transcript, for instance, change the light was red to the light was green could be commented upon by myself or any other attorney in this case in an attempt to impugn your credibility.** Do you understand that?

Ex. 1, 10:10-24. Their attempt to change the Rule 30(e) Stipulation after the fact should be rejected.

Defendants and Third-Party Defendants now attempt to retract their own Rule 30(e) Stipulation and ask the Court to apply an incomplete and inaccurate version of the

Tenth Circuit's more exacting standard. However, even under the Tenth Circuit's standard, the errata changes in this case are proper. The Motion should be denied.

## I.
## MR. SOUERS' DEPOSITION WAS CONDUCTED UNDER THE MAJORITY RULE ALLOWING SUBSTANTIVE CHANGES IN AN ERRATA SHEET

Under Fed. R. Civ. P. 29, parties may stipulate to the manner of taking depositions and "other procedures governing or limiting discovery" unless it interferes with "the time set for completing discovery, for hearing a motion, or for trial. Fed. R. Civ. P. 29; *see, also, U.S. v. Mezzanatto*, 513 U.S. 196 (1995) ("Rather than deeming waiver presumptively unavailable absent some sort of express enabling clause, we instead have adhered to the opposite presumption."); *Peretz v. United States*, 501 U.S. 923, 936 (1991) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit."). There is nothing in Fed. R. Civ. P. 30(e) to indicate that the parties cannot alter its terms by agreement. Indeed, agreed extensions of the time for returning an errata sheet under Rule 30(e) are commonplace.

In *Wells Fargo Bank, N.A. v. LaSalle Nat'l Bank Ass'n*, Case No. 5:08-cv-01125-C, Dkt. #335 (W.D. Okla. 2011) (copy attached), Judge Cauthron considered whether the parties had reached an agreement to extend the deadline for return of an errata sheet under Rule 30(e). Judge Cauthron found that language less precise than the Rule 30(e) Stipulation created such an agreement. Refusing to strike the errata sheet, Judge Cauthron also summarily rejected arguments that the substantive changes in the errata sheet required it to be stricken. Judge Cauthron held, "Any further objections Plaintiff's

11

counsel may have to Mr. Dwyer's errata sheet may be raised on cross examination and go towards the weight given that testimony by the trier of fact."

The same result is required here. Opposing counsel made the Rule 30(e) Stipulation for the conduct of Mr. Souers' deposition and the return of his errata sheet. Opposing counsel expressly instructed the witness that he could make any changes he wished—specifically including substantive changes—subject to the risk of having his credibility attacked. Accordingly, the deposition proceeded under the Rule 30(e) Stipulation and the plain language of Rule 30(e).

As the Court noted in the January 5, 2017 telephonic conference, the other side is free to point out the clarification and can attempt to impugn Mr. Souers' credibility over the different information in the Post Frac Daily Report and the Casing Tally. The jury will be able to see the original deposition testimony as well as the errata sheet, and Mr. Souers will be subject to examination regarding the differences in his testimony. No further relief or remedy is necessary or appropriate.

The errata sheet should not be stricken. The Motion should be denied.

## II.
## THE ERRATA SHEET IS PROPER UNDER
## THE STANDARD APPLICABLE IN THE TENTH CIRCUIT

The Tenth Circuit applies the "sham affidavit" standard to determine whether errata sheet changes are proper or improper. Even under this standard, Mr. Souers' errata sheet should not be stricken.

The Motion does not accurately state the Tenth Circuit's minority interpretation of Rule 30(e). The Motion relies on *dicta* contained in a footnote in *Garcia v. Pueblo Country Club*, 299 F.3d 1233 (10th Cir. 2002). In *Garcia*, the Tenth Circuit reversed an order granting summary judgment in favor of an employer, finding questions of fact. By footnote, the Tenth Circuit was critical of the employer's attempt to **establish undisputed facts** using an errata sheet which "strayed substantively from the original testimony." Id. at 1242 n. 5 (emphasis added). Those are not the facts here.

One year after *Garcia*, in *Burns v. Board of County Commissioners of Jackson County*, 330 F.3d 1275 (10th Cir. 2003), the Tenth Circuit affirmed the District Court's rejection of plaintiff's errata sheet changes, which attempted to create material questions of fact to defeat summary judgment, and then granted summary judgment to the defendant. The Tenth Circuit held that alterations must be material and must be examined under the "sham affidavit" test of *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986).

Mr. Souers' reference to complete "data" does not make the errata sheet a "sham affidavit" under *Franks*. The Motion should therefore be denied.

A.   **The Clarification Is Not A "Sham Affidavit"**

The very first factor of the sham affidavit test is absent in this case. *Burns* at 1282 (first factor is whether deponent was cross-examined at deposition). Plaintiffs were deprived of the right to cross-examine Mr. Souers. During cross-examination, Mr. Souers would have been asked whether the Casing Tally data indicated a failure in the body of casing joint 105 in the Robison. He would have been asked whether differentiating the

coupling from the casing joint body would change: (1) his opinions ruling out drilling, completion operations and environmental issues as possible causes of the failures; (2) his opinions regarding repair and remediation costs; or (3) his opinion about loss of hydrocarbon bearing strata. Plaintiffs' counsel would have cross-examined Mr. Souers if Defendants' and Third-Party Defendants' counsel had passed the witness on October 21, 2016.

Plaintiffs' counsel agreed to accommodate the demands of Defendants' and Third-Party Defendants' counsels' request to adjourn and reconvene Mr. Souers' deposition upon specific conditions. Defendants and Third-Party Defendants now seek to use that accommodation as a sword against Plaintiffs, but such gamesmanship cannot succeed. In both *Franks* and *Burns*, the witness was cross-examined at his deposition. By unilaterally declaring two days beforehand that Mr. Souers' deposition would not reconvene on January 5, 2017, as agreed, Plaintiffs here were deprived of that right.

Where a party is deprived of the right to cross-examine, the errata sheet cannot be rejected under the sham affidavit analysis. The Motion should be denied.

**B.     The Cases Rejecting Errata Sheet Changes Are Factually Inapposite**

All of the cases striking or disregarding an errata sheet do so where testimony was changed to defeat a dispositive motion. Those are not the facts here. *See* Proposition II(A).

None of the cases disallowing errata sheet changes did so on the basis urged by Defendants and Third-Party Defendants—that the change is intended to eliminate

contradictions between two experts testifying on the Plaintiffs' behalf. Motion at 3, ¶ 10. *See BancFirst ex rel. Estate of M.J.H. v. Ford Motor Co.*, 422 Fed.Appx. 663 (10th Cir. 2011) (expert's errata offered in opposition to motion for summary judgment); *Burns* (attempted use of errata to defeat motion for summary judgment); *Franks* (attempted use of sham affidavit to defeat motion for summary judgment)*, Garcia* (attempted use of contradictory errata in support of motion for summary judgment). Significantly, each of the cases involved changes offered only after a dispositive motion was pending. Those are not the facts here. Mr. Souers' errata sheet was not made in response to any pending dispositive or other substantive motion.

Mr. Souers' errata sheet clarifies that there is more precise data in the Robison Casing Tally indicating a failure in the casing body, not the coupling. Defendants have made no effort to demonstrate harm or prejudice of any kind, much less the type of prejudice shown in the cited cases. In those cases, the errata sheet change was needed to resurrect a case. Those are not the circumstances here. The Motion should be denied.

## **CONCLUSION**

Mr. Souers' errata sheet is proper under the Rule 30(e) Stipulation and the plain language of Rule 30(e). The errata sheet is not a "sham affidavit." The errata sheet was not submitted after or in response to any dispositive or other substantive motion. Plaintiffs were deprived of their right to cross-examination. Defendants and Third-Party Defendants can examine Mr. Souers at trial regarding his clarification and corrections in his errata sheet. Third-Party Defendants' Motion should be denied.

Respectfully submitted,
*/s/ Robin Fields*
Robin F. Fields, OBA #10806
Kiran A. Phansalkar, OBA #11470
Heidi M. Nichols, OBA #20294
Valerie V. Hatami, OBA # 32422
CONNER & WINTERS, LLP
1700 One Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 272-5711
Facsimile: (405) 232-2695
Email: rfields@cwlaw.com
kphansalkar@cwlaw.com
hnichols@cwlaw.com
vhatami@cwlaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February 2017, I electronically filed a true and correct copy of the above and foregoing document and served the same upon all parties of record via the Court's ECF system.

*/s/ Robin Fields*
Robin F. Fields